

# Notice of Service of Process

**null / ALL**
**Transmittal Number: 19072255**
**Date Processed: 12/10/2018**

| | |
|---|---|
| **Primary Contact:** | Arnold D'Angelo<br>Zurich North America<br>1299 Zurich Way<br>Schaumburg, IL 60196-1056 |
| **Electronic copy provided to:** | Vicky Russell |

| | |
|---|---|
| **Entity:** | Zurich American Insurance Company<br>Entity ID Number  2746725 |
| **Entity Served:** | Zurich American Insurance Company |
| **Title of Action:** | Bozena Chrzasvcz vs. Zurich American Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Pinellas County Circuit Court, FL |
| **Case/Reference No:** | 18-007549-CI |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 12/10/2018 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | FL Chief Financial Officer on 12/06/2018 |
| **How Served:** | Electronic SOP |
| Sender Information: | Steven E Hovsepian<br>813-254-6575 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

*18-000285722*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

BOZENA CHRZASVCZ,

PLAINTIFF(S)

VS.

ZURICH AMERICAN INSURANCE COMPANY,

DEFENDANT(S)
_____/

SUMMONS, COMPLAINT, EXHIBIT

| | |
|---|---|
| **CASE #:** | **18-007549-CI** |
| **COURT:** | **CIRCUIT COURT** |
| **COUNTY:** | **PINELLAS** |
| **DFS-SOP #:** | **18-000285722** |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by MAIL on Thursday, December 6, 2018 and a copy was forwarded by ELECTRONIC DELIVERY on Monday, December 10, 2018 to the designated agent for the named entity as shown below.

      ZURICH AMERICAN INSURANCE COMPANY
      LYNETTE COLEMAN
      1201 HAYS STREET
      TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

STEVEN E HOVSEPIAN, ESQ.
BARBAS, NUNEZ, SANDERS, BUTLER & HOVSEPIAN
1802 W. CLEVELAND STREET
TAMPA, FL 33606

CA1

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## IN AND FOR PINELLAS COUNTY, STATE OF FLORIDA

Bozena Chrzasvcz,

                              Case Number: 18-007549-CI

      Plaintiff,

v.

Zurich American Insurance Company,

      Defendant.

_____/

## SUMMONS

**THE STATE OF FLORIDA**

**TO EACH SHERIFF OF THE STATE:**

     **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on the defendant:

                    **Zurich American Insurance Company**
**By Serving:**  **c/o Chief Financial Officer**
                    **200 E. Gaines St.**
                    **Tallahassee, FL 32399**

     Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, whose name and address is:

                    **Steven E.  Hovsepian, Esquire**
                    **Barbas, Nunez, Sanders, Butler & Hovsepian**
                    **1802 West Cleveland Street**
                    **Tampa, FL 33606**

within 20 days after service of this summons upon that defendant, exclusive of the day of service, and to file the original of the written defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

     Dated on _____, 2018.

                          Clerk of the Court

                          By: _____
                              Deputy Clerk

RECEIVED AS STATUTORY REGISTERED AGENT on 06 December, 2018 and served on defendant or named party on 10 December, 2018 by the Florida Department of Financial Services

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.    **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SIXTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>PINELLAS</u> COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Bozena Chrzasvcz</u>
Plaintiff
        vs.
<u>Zurich American Insurance Company</u>
Defendant

II.    **TYPE OF CASE**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
    ☐  Business governance
    ☐  Business torts
    ☐  Environmental/Toxic tort
    ☐  Third party indemnification
    ☐  Construction defect
    ☐  Mass tort
    ☐  Negligent security
    ☐  Nursing home negligence
    ☐  Premises liability – commercial
    ☐  Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐  Commercial foreclosure $0 - $50,000
    ☐  Commercial foreclosure $50,001 - $249,999
    ☐  Commercial foreclosure $250,000 or more
    ☐  Homestead residential foreclosure $0 – 50,000
    ☐  Homestead residential foreclosure $50,001 - $249,999
    ☐  Homestead residential foreclosure $250,000 or more
    ☐  Non-homestead residential foreclosure $0 - $50,000
    ☐  Non-homestead residential foreclosure $50,001 - $249,999

☐ Non-homestead residential foreclosure $250,00 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
    ☐  Malpractice – business
    ☐  Malpractice – medical
    ☐  Malpractice – other professional
☒ Other
    ☐  Antitrust/Trade Regulation
    ☐  Business Transaction
    ☐  Circuit Civil - Not Applicable
    ☐  Constitutional challenge-statute or ordinance
    ☐  Constitutional challenge-proposed amendment
    ☐  Corporate Trusts
    ☐  Discrimination-employment or other
    ☒  Insurance claims
    ☐  Intellectual property
    ☐  Libel/Slander
    ☐  Shareholder derivative action
    ☐  Securities litigation
    ☐  Trade secrets
    ☐  Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.  **REMEDIES SOUGHT** (check all that apply):
- ☒ Monetary;
- ☐ Non-monetary declaratory or injunctive relief;
- ☐ Punitive

IV.  **NUMBER OF CAUSES OF ACTION:** (    )
(Specify)

(1) Breach of Contract By Insurer/Action To Recover Benefits Under Occupational Insurance Policy

V.  **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☐ Yes
- ☒ No

VI.  **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☒ No
- ☐ Yes – If "yes" list all related cases by name, case number and court:

VII.  **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒ Yes
- ☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature s/ Steven E Hovsepian        FL Bar No.: 91359
      Attorney or party                                                                    (Bar number, if attorney)

Steven E Hovsepian    11/19/2018
     (Type or print name)                                                          Date

# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT IN AND FOR PINELLAS COUNTY, STATE OF FLORIDA

BOZENA CHRZASVCZ,

    Plaintiff,

                             Case No:

ZURICH AMERICAN
INSURANCE COMPANY,

    Defendant.

_____/

## COMPLAINT

Plaintiff, Bozena Chrzasvcz, by and through her undersigned counsel, hereby sues the Defendant, Zurich American Insurance Company (hereinafter referred to as "Zurich"), and states as follows:

## JURISDICTION AND VENUE

1.  This is an action against the Defendant for breach of an insurance contract, and specifically breach of an Occupational Accident Insurance Policy, for damages that exceed $15,000.00.

2.  Plaintiff at all times material hereto was a resident of Pinellas County, Florida.

3.  Defendant, Zurich, is a Foreign corporation that at all times material hereto was engaged in the business of providing Occupational Accident Insurance within Pinellas County Florida, and is subject to the jurisdiction of this Court.

4.  Venue in Pinellas County is proper as the breach of contract at issue occurred in Pinellas County, Florida.

1

## GENERAL ALLEGATIONS

5.    Plaintiff was an employee/driver of GT Expedited, Inc, and during her employment was covered under an Occupational Accident Insurance Policy issued by Defendant. The policy issued by Defendant, which bears policy number OCA 6478468-01 ("The Policy") is attached hereto as Exhibit "A" and incorporated herein by reference.

6.    The Policy at issue was effective as of November 1, 2014 and was at all times material hereto in effect and covered Plaintiff for medical and disability benefits. The Policy of insurance issued to Plaintiff, and administered by Defendant, constituted a written contract.

7.    Plaintiff paid all insurance premiums for the Policy to remain in effect, and Plaintiff has performed all conditions precedent to the bringing of this action, or Defendant has waived any such conditions prior to the commencement of this action.

8.    On or about February 24, 2016, while The Policy was in full force and effect, Plaintiff was involved in an accident and became disabled as defined by The Policy.

9.    The disability resulting from Plaintiff's accident was accepted by Defendant under the terms of The Policy, and Plaintiff began receiving temporary total disability benefits pursuant to The Policy's terms, with an agreed disability date of February 24, 2016.

## COUNT I: BREACH OF CONTRACT BY INSURER/ACTION TO RECOVER BENEFITS UNDER OCCUPATIONAL INSURANCE POLICY

10.    Plaintiff re-alleges paragraphs 1 through 9 as if set forth fully herein.

11.    Following Plaintiff's accident on February 24, 2016, Plaintiff continued to meet The Policy definition for temporary total disability benefits. Defendant paid Plaintiff temporary total disability benefits for approximately 48 weeks, at the maximum benefit rate of $500.00 weekly.

2

12.    In approximately March of 2017 Defendant failed or refused to continue to pay Plaintiff any further disability benefits, despite Plaintiff's entitlement to these benefits due to her continuing disability as defined under the Policy.

13.    Plaintiff's disability met all Policy requirements and definitions for temporary total disability and for continuous total disability benefits.    Plaintiff has provided all documentation to Defendant regarding her disability and has otherwise exhausted all appeals and pre-requisites for filing suit for these benefits.

14.    Defendant denied and refused to pay any additional disability benefits to which Plaintiff is entitled to under The Policy.  Defendant's refusal to pay any additional disability benefits is a breach of The Policy and the provisions contained therein.

15.    Plaintiff has performed all acts required of her under the terms of The Policy.

16.    As a result of Defendant's breach of The Policy, Plaintiff has suffered damages to include the benefit amounts due to her under The Policy, plus interest and consequential damages.

17.    Plaintiff has retained the undersigned counsel to represent her as a result of Defendant's breach of contract, and has become obligated to pay such counsel a reasonable attorney's fee for their services.

**WHEREFORE**, Plaintiff demands judgment against Defendant Zurich, the insurer, for an amount of damages to be proven at trial, plus consequential damages, with interest, costs, attorney's fees pursuant to Florida Statute 627.428, and such other relief as may be appropriate.


Plaintiff demands a jury trial on all issues so triable.

3

Dated this ___19th___ day of November 2018.

Respectfully Submitted,

/s/ Steven E Hovsepian
Steven E. Hovsepian, Esquire
BARBAS, NUNEZ, SANDERS
  BUTLER & HOVSEPIAN
1802 W. Cleveland Street
Tampa, Florida 33606
Ph.(813) 254-6575
Fax (813)254-4690
FBN: 091359
Attorneys for Plaintiff
shovsepian@barbaslaw.com

4

# Truckers Occupational Accident Insurance Certificate



## ZURICH

**ZURICH AMERICAN INSURANCE COMPANY**
1400 American Lane
Schaumburg, Illinois 60196

This is a summary of the accident insurance **We** provide on behalf of the **Policyholder** to **You** if **You** are within a class of eligible persons described in the **Schedule** and if the required premiums are paid when due.

BENEFITS ARE REDUCED UPON ATTAINMENT OF SPECIFIED AGES.

THE INSURANCE EVIDENCED BY THIS CERTIFICATE PROVIDES ACCIDENT COVERAGE ONLY.

THE POLICY DOES NOT PROVIDE COVERAGE FOR SICKNESS.

THIS IS A SUMMARY OF COVERAGE ONLY WHICH SUMMARIZES AND EXPLAINS THE PARTS OF THE POLICY WHICH APPLY TO YOU.

FOR ALL TERMS AND CONDITIONS OF COVERAGE, PLEASE REVIEW THE POLICY ISSUED TO THE POLICYHOLDER AND ON FILE WITH THEM AT THEIR PLACE OF BUSINESS.  YOU CAN OBTAIN A COPY OF THE POLICY FROM THE POLICYHOLDER.

THIS CERTIFICATE IS NOT AN INSURANCE POLICY.  IN THE EVENT OF A CONFLICT OF PROVISIONS BETWEEN THE POLICY AND THIS CERTIFICATE, THE PROVISIONS OF THE POLICY WILL GOVERN.

IMPORTANT NOTICE
THIS IS NOT A WORKERS' COMPENSATION POLICY AND IS NOT A SUBSTITUTE FOR WORKERS' COMPENSATION COVERAGE.

PLEASE READ THIS CERTIFICATE CAREFULLY



EXHIBIT A

U-OA-402-A IL (08/09)

## TABLE OF CONTENTS

| | |
|---|---|
| SECTION I | SCHEDULE |
| SECTION II | GENERAL DEFINITIONS |
| SECTION III | EFFECTIVE DATES AND TERMINATION DATES |
| SECTION IV | PREMIUMS |
| SECTION V | BENEFITS |
| SECTION VI | ADDITIONAL BENEFITS |
| SECTION VII | LIMITS OF LIABILITY |
| SECTION VIII | GENERAL EXCLUSIONS AND LIMITATIONS |
| SECTION IX | CLAIM PROVISIONS |
| SECTION X | GENERAL PROVISIONS |

THIS CERTIFICATE IS NOT WORKERS' COMPENSATION AND DOES NOT REQUIRE PRE-AUTHORIZATION OF A PHYSICIAN FOR COVERED SERVICES OR TREATMENT. YOU MAY CONSULT US AT 1-888-889-5330 TO DETERMINE IF A SERVICE OR TREATMENT IS COVERED.

YOU CANNOT BE COVERED BY ANY OTHER OCCUPATIONAL ACCIDENT POLICY ISSUED BY US. IF YOU PAY PREMIUM BUT ARE NOT ELIGIBLE FOR COVERAGE OR DO NOT QUALIFY FOR BENEFITS UNDER THE POLICY, WE WILL REFUND ANY UNEARNED PREMIUM PAID IN ERROR.

## SECTION I - SCHEDULE

Policy Effective Date:      11/01/2014              Your Premium: **Refer to Policyholder**

**Policy Period:**          11/01/2014 and continuous thereafter until terminated

Policy Premium Due Date: 11/01/2014          **Policyholder:**   GT EXPEDITED INC

Policy Number:              OCA 6478468-01                                574 PEREGRINE PKWY
                                                                          BARTLETT, IL  60103-1238

### Eligible Persons

**You** are eligible to become an **Insured Person** under the **Policy** if **You** meet the following criteria:

CLASS I:    **Actively at Work Owner/Operator** who has enrolled for coverage under this **Policy**.

CLASS II:   **Actively at Work Contract Driver** who has enrolled for coverage under this **Policy**.

### Benefits Summary

| | | Occupational Injuries | Non-Occupational Injuries |
|---|---|---|---|
| [X] | Accidental Death Benefit: | | |
| | **Principal Sum\*** | $50,000 | $15,000 |
| | **Commencement Period** | 365 days | 365 days |
| | | | |
| [X] | Survivor's Benefit: | | |
| | **Principal Sum\*** | $200,000 | N/A |
| | Monthly Benefit Percentage of **Principal Sum** | 1.00% | N/A |
| | **Monthly Benefit Amount** | $2,000 | N/A |
| | | | |
| [X] | Accidental Dismemberment Benefit: | | |
| | **Principal Sum\*** | $250,000 | $15,000 |
| | **Commencement Period** | 365 days | 365 days |
| | | | |
| [X] | Accidental Paralysis Benefit: | | |
| | **Principal Sum\*** | $250,000 | $15,000 |
| | **Commencement Period** | 365 days | 365 days |
| | | | |

U-OA-402-A IL (08/09)

| [X] | Accident Medical Expense Benefit: | | |
|---|---|---|---|
| | **Commencement Period** | 180 days | 180 days |
| | **Deductible Amount** | $0 | $0 |
| | **Maximum Benefit Amount** | $1,000,000 | $10,000 |
| | **Maximum Benefit Period** | 104 weeks | 52 weeks |
| | Dental Benefit Maximum | $1,000 | $1,000 |
| | Lifetime **Maximum Benefit Amount** | $1,000,000 | $10,000 |
| | Physical, Occupational, or Work Hardening Therapies | To a maximum-combined 36 visits | To a maximum-combined 36 visits |
| | Ambulance for Medically Necessary Services | 1 round trip to and from a **Hospital** to a Maximum of $10,000 per **Accident** | 1 round trip to and from a **Hospital** to a Maximum of $10,000 per **Accident** |
| | Acupuncture Care and Chiropractic Care | $1,000 per **Injury** | $1,000 per **Injury** |
| | **Mental and Nervous or Depressive Condition** | 1 visit(s) per day to a maximum of $25 per visit and 20 visits per **Accident** | 1 visit(s) per day to a maximum of $25 per visit and 20 visits per **Accident** |
| | | | |
| [X] | Temporary Total Disability Benefit: | | |
| | **Commencement Period** | 180 days | 180 days |
| | **Waiting Period** | 7 days | 14 days |
| | Benefit Percentage | 70% | 70% |
| | **Minimum Weekly Benefit Amount** | $125 | $125 |
| | **Maximum Weekly Benefit Amount** | $500 | $500 |
| | **Maximum Benefit Period**\*\* | 104 weeks | 13 weeks |
| | | | |
| [X] | Continuous Total Disability Benefit: \*\*\* | | |
| | **Waiting Period** | equals **Maximum Benefit Period** for **Temporary Total Disability** | N/A |
| | Benefit Percentage | 70% | N/A |
| | **Minimum Weekly Benefit Amount** | $50 | N/A |
| | **Maximum Weekly Benefit Amount** | $500 | N/A |
| | **Maximum Benefit Amount** | $200,000 | N/A |
| | **Maximum Benefit Period** | Up to age 70, but not beyond full Social Security retirement age | N/A |
| | | | |
| [X] | Limits of Liability: | | |
| | **Combined Single Limit of Liability** | $1,000,000 | $15,000 |
| | **Aggregate Limit of Liability** | $2,000,000 | $30,000 |
| | Sub Limits of Liability: | | |
| | **Combined Single Limit of Liability for:** | | |
| | **Pre-Existing Conditions** | $10,000 | N/A |
| | **Occupational Disease** | $50,000 | N/A |
| | **Occupational Cumulative Trauma** | $50,000 | N/A |

\*   Starting at age 65, the **Principal Sum** shall be based on the following schedule:

| Age at Date of Loss | Percent of **Principal Sum** |
|---|---|
| 65 | 80% |
| 66 | 60% |
| 67 | 40% |
| 68 | 20% |
| 69 | 15% |
| 70 and over | 10% |

\*\*   If **You** suffer an **Injury** at or after age 70, the **Maximum Benefit Period** shall be one (1) year.

\*\*\*   If **You** sustain an **Injury** within six months or less of attaining **Your** full Social Security retirement age, as defined by the United States Social Security Administration, **You** do not qualify for the Continuous Total Disability Benefit.

## SECTION II - GENERAL DEFINITIONS

**Accident** means an unintended or unforeseeable event or occurrence that occurs while coverage is in effect under the **Policy**.

**Actively at Work** means under **Dispatch** for at least 30 hours each week.

**Aggregate Limit of Liability** shown in the **Schedule** is the maximum amount **We** will pay under the **Policy** for all **Covered Losses** with respect to all **Insured Persons** arising out of all **Injuries** sustained as the result of any one **Accident**.

**Assignment** means the **Policyholder** has offered and **You** have accepted a shipment of freight as recorded in the books and records of the **Policyholder** in the ordinary course of business.

**Certificate** means this Truckers Occupational Accident Insurance Certificate.

**Company** means Zurich American Insurance Company.

**Co-Owner** means a person who has partial ownership of a vehicle operating as an **Owner/Operator**.

**Combined Single Limit of Liability** means, with respect to **You**, the maximum amount that **We** will pay for all **Covered Loss** under the **Policy** for or in connection with **Injury** to **You** resulting from any one **Accident**. When the **Combined Single Limit of Liability** has been reached, no further benefits shall be payable under the **Policy**, with respect to You, for or in connection with **Injury** sustained as the result of that one **Accident**.

**Commencement Period** means the period between the date of the **Accident** that caused the **Injury** and the date on which the **Covered Loss** must occur for benefits to be payable under the Accidental Death Benefit, the Accidental Dismemberment Benefit, Accidental Paralysis Benefit, Accident Medical Expense Benefit and/or the Temporary Total Disability Benefit.

**Contract Driver** means an individual who:
1.  has a valid and current commercial driver's license on the effective date of enrollment;
2.  is authorized by an **Owner/Operator** to operate a power unit owned or leased by an **Owner/Operator** and must neither own nor lease the power unit;
3.  is compensated on a basis other than time expended in the performance of work;
4.  is responsible for determining the route and time for **Assignment**;
5.  has the principal duty to operate the power unit;
6.  is classified as an independent contractor by the **Policyholder** and the **Owner/Operator** who has engaged his or her services and not as an employee for purposes of workers' compensation insurance, federal income taxes, state income taxes, social security, unemployment insurance, or for any other purpose, unless workers' compensation coverage is not mandatory for such person as an employee of either the **Policyholder** or **Owner/Operator**; and
7.  receives for federal income tax reporting purposes a 1099 and not a W-2.

**Covered Loss**, in the singular or plural, means one or more of the losses or expenses identified in Sections V and VI of

this **Certificate** that are not specifically excluded herein.

**Cumulative Trauma or Repetitive Conditions** means **Non-Occupational** conditions that impair the normal physiological function of the body over an extended period, but do not arise as the result of a single **Accident**.

**Dependent Child(ren)** means **Your** unmarried children, including natural children from the moment of birth, step or foster children, or adopted children from the date of the final decree of adoption, who are:

1. under age 26 if he or she relies on **You** for more than 50% of his or her support and is taken as a dependent on **Your** Federal Income Tax Return;
2. under age 30 if he or she: (a) is an Illinois resident, (b) served as a member of the active or reserve components of any of the branches of the Armed Forces of the United States, and (c) has received a release or discharge other than a dishonorable discharge; or
3. incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on **You** for support and maintenance as defined herein.

**We** may require proof of the **Dependent Child(ren)'s** incapacity and dependency within 60 days before the **Dependent Child(ren)** reached the age limit specified above. **We** may request that satisfactory proof of the **Dependent Child(ren)'s** continued incapacity and dependency be submitted to **Us** on an annual basis. If the requested proof is not furnished within 31 days of the request, such child(ren) shall no longer be considered **Dependent Child(ren)** as of the end of that 31 day period.

**Dispatch** means the time during which **You** are on **Assignment** or **You** are performing tasks prior to or after an **Assignment** to prepare the contracted vehicle for a current or future **Assignment**. **Dispatch** must be authorized by the **Policyholder** and includes the following:

1. in route to pick up a load;
2. picking up a load;
3. in route to delivering a load;
4. unloading a load;
5. the waiting time for a load;
6. returning from delivering a load;
7. in route to, returning from or performing a pre-trip inspection as required by a recognized governmental agency and/or the contracted motor carrier;
8. while performing vehicle maintenance or repairs on the contracted vehicle during any of the foregoing times; and
9. while performing verifiable vehicle maintenance or repairs on the contracted vehicle; and
10. performing activities to comply with federal or state laws or to satisfy contracted motor carrier requirements.

**Eligible Person(s)** means a Class I or Class II individual described in the **Schedule**.

**Household Member** means a person who maintains residence at the same address as **You** and is not an **Immediate Family Member**.

**Immediate Family Member** means **Your Spouse**, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent, stepparent, brother, sister, stepbrother, stepsister, child, child who has been legally adopted, or stepchild.

**Injury**, in the singular or plural, means bodily injury caused by an **Accident**, which occurs while **You** are covered under the **Policy** and the **Injury** must result directly and independently of disease or illness, in a **Covered Loss**. All **Injuries** sustained by **You** in any one **Accident** shall be considered a single **Injury**.

**Insured Person(s)** means an **Owner/Operator** or **Contract Driver**:

1. who is enrolled for coverage under the **Policy**;
2. who has paid the required premium when due; and
3. whose coverage is in effect under the **Policy**.

**Maximum Benefit Amount** means the maximum amount that **We** will pay under the Continuous Total Disability Benefit or the Accident Medical Expense Benefit. The applicable **Maximum Benefit Amount** is shown in the **Schedule**.

**Maximum Benefit Period** means the maximum period that **We** will pay benefits, after the **Waiting Period**, under the Temporary Total Disability Benefit, the Continuous Total Disability Benefit or the Accident Medical Expense Benefit. The applicable **Maximum Benefit Period** is shown in the **Schedule**.

**Maximum Weekly Benefit Amount** means the maximum amount that **We** will pay each week under the Temporary Total Disability Benefit or the Continuous Total Disability Benefit. The applicable **Maximum Weekly Benefit Amount** is shown in the **Schedule**.

**Mental and Nervous or Depressive Condition** means mental, nervous or emotional diseases or disorders of any type including schizophrenia, dementia, organic brain syndrome, delirium, amnesia syndromes, and organic delusional or hallucinogenic syndromes.

**Minimum Weekly Benefit Amount** means the minimum amount that **We** will pay each week under the Temporary Total Disability Benefit or the Continuous Total Disability Benefit. The applicable **Minimum Weekly Benefit Amount** is shown in the **Schedule**.

**Non-Occupational** means benefits payable for an **Injury** due to an **Accident** sustained by **You** while not under **Dispatch**.

**Occupational** means, with respect to an activity, **Accident**, incident, circumstance or condition involving **You**, that the activity, **Accident**, incident, circumstance or condition occurs or arises out of or in the course of **You** performing services within the course and scope of contractual obligations for the **Policyholder**, and while under **Dispatch**. **Occupational** does not encompass any period during the course of everyday travel to and from work, other than as allowed under **Dispatch**, or while on vacation.

**Occupational Assessment** means a test of vocational capabilities, including review of medical records, **Injury** and treatment, history and background (education, military, previous occupation(s)), and evaluation of basic skills such as reading, understanding, spelling and/or math capabilities, and vocational alternatives.

**Occupational Cumulative Trauma** means bodily injury that impairs the normal physiological function of the body caused by the combined effect of repetitive physical **Occupational** activities extending over a period of time and does not arise as the result of a single **Accident**, when:
1. such condition is diagnosed by a **Physician**;
2. **Your** last day of last performance of the activities causing the bodily injury occurred while **Your** coverage is in effect; and
3. such bodily injury resulted directly, and independently of all other causes, in a **Covered Loss**.

**Occupational Disease** means a sickness that results in disability or death, and is caused by exposure to environmental or physical hazards during the course of **Your Occupational** activities, when:
1. such sickness is diagnosed by a **Physician** and is generally accepted by the National Centers for Disease Control to be a disease caused by such hazards;
2. exposure to such hazards is not an **Accident** but is caused or aggravated by the conditions under which **You** perform **Occupational** activities;
3. **Your** last day of last exposure to the environmental or physical hazards causing such sickness occurs while **Your** coverage is in effect; and
4. such exposure results directly and independently of disease or bodily infirmity in a **Covered Loss**.

**Owner/Operator** means an individual who leases to or from the **Policyholder** and:
1. has a valid and current commercial driver's license on the effective date of enrollment;
2. owns or leases a power unit;
3. is responsible for the maintenance and operating costs of the power unit, including, but not limited to fuel, repairs and supplies;
4. is compensated on a basis other than time expended in the performance of work;
5. is responsible for determining the route and time for **Assignment**;
6. has the right to select or reject the load;
7. has a written contract or **Assignment** from the **Policyholder** and is classified as an independent contractor by the **Policyholder** and not as an employee for purposes of workers' compensation insurance, federal income taxes, state income taxes, social security, unemployment insurance or for any other purpose; and
8. receives for federal income tax reporting purposes a 1099 not a W-2.

**Physician** means a qualified medical doctor acting within the scope of his or her license who is not:
1. **You**;
2. an **Immediate Family Member**;

3. a **Household Member**; or
4. a practitioner retained by the **Policyholder**.

**Policy** means the Truckers Occupational Accident Insurance Policy issued to the **Policyholder**.

**Policyholder** means the entity named as **Policyholder** in the **Schedule**.

**Policy Period** means the period shown in the **Schedule**, subject to prior termination pursuant to Section III of the **Policy**.

**Pre-Existing Condition** means a condition for which **You** have sought or received medical advice or treatment at any time during the twelve months immediately preceding **Your** effective date of coverage under the **Policy**.

**Principal Sum** means the maximum amount that **We** will pay under the Accidental Death Benefit, the Survivor's Benefit, the Accidental Dismemberment Benefit or the Accidental Paralysis Benefit. The applicable **Principal Sum** is shown in the **Schedule** and is subject to the **Combined Single Limit of Liability** and the **Aggregate Limit of Liability**.

**Schedule** means SECTION I of the **Policy** and this **Certificate**.

**Spouse** means **Your** legal spouse.

**Third Party** in the singular or plural means, but is not limited to, the following:
1. the party that caused the **Accident, Injury** or other medical condition and any insurer or indemnifier thereof;
2. **Your** insurer including, but not limited to, uninsured motorist, underinsured motorist, medical payment or no-fault insurers; or
3. any other person, entity, policy or plan that is liable or legally responsible to make payments in relation to the **Accident, Injury** or other medical condition.

**Waiting Period** means the consecutive number of days **You** must be **Temporarily Totally Disabled** or **Continuously Totally Disabled** before benefits become payable under the **Policy**. Temporary Total Disability Benefits and Continuous Total Disability Benefits are not retroactive to the first day of disability. The **Waiting Period** is shown in the **Schedule**.

**We, Us,** and **Our** means Zurich American Insurance Company.

**You, Your,** and **Yourself** means the **Insured Person** to whom a **Certificate** is issued.

## SECTION III - EFFECTIVE DATES AND TERMINATION DATES

### Policy Effective and Termination Dates
1. Policy Effective Date. The **Policy** begins on the Policy Effective Date shown in the **Schedule** at 12:01 A.M. Standard Time at the address of the **Policyholder** where the **Policy** is delivered.

2. Policy Termination Date. The **Policy** will terminate at 12:01 A.M. Standard Time at the **Policyholder's** address on the earliest of:
   a. the Policy Premium Due Date shown in the **Schedule**, subject to the Policy Grace Period set forth in Section IV of the **Policy**;
   b. the date specified in the written notice of **Our** intent to terminate the **Policy**, which will be at least thirty (30) days after the date **We** send such notice to the **Policyholder's** last known recorded address;
   c. the date specified in the written notice of the **Policyholder's** intent to terminate the **Policy**, which will be at least thirty (30) days after the date the **Policyholder** sends such notice to **Us**; or
   d. at the expiration of the **Policy Period**.

   If **We** terminate the **Policy**, any unearned premium will be returned on a pro-rata basis. If the **Policyholder** requests termination, **We** will return any unearned premium paid on a pro-rata basis. Termination will not affect any claim for a **Covered Loss** occurring prior to the effective date of termination.

### Owner/Operator's Effective and Termination Dates
1. **Owner/Operator's** Effective Date. An **Owner/Operator's** coverage under the **Policy** begins on the latest of:
   a. the Policy Effective Date shown in the **Schedule**;
   b. the date the **Owner/Operator** becomes an **Insured Person**; or
   c. if an individual application is required, the date the written application is received by the **Policyholder** or an authorized person designated by the **Policyholder**.

Coverage is not effective until the first premium is paid when due. If premium is paid when due, coverage is effective on the later of a, b or c above. If premium is not paid when due, coverage will not be in effect.

2. **Owner/Operator's** Termination Date: An **Owner/Operator's** coverage under the **Policy** ends on the earliest of:
   a. the date the **Policy** is terminated;
   b. the Policy Premium Due Date shown in the **Schedule**, subject to the Policy Grace Period set forth in Section IV of the **Policy**;
   c. the date the **Owner/Operator** requests, in writing, that his or her coverage be terminated; or
   d. the date the **Owner/Operator** ceases to be an **Insured Person**.

## Contract Driver's Effective and Termination Dates

1. **Contract Driver's** Effective Date. A **Contract Driver's** coverage under the **Policy** begins on the latest of:
   a. the Policy Effective Date shown in the **Schedule**;
   b. the date the **Contract Driver** becomes an **Insured Person**; or
   c. if an individual application is required, the date the written application is received by the **Policyholder** or an authorized person designated by the **Policyholder**.

   Coverage is not effective until the first premium payment is paid when due. If premium is paid when due, coverage is effective on the later of a, b or c above. If premium is not paid when due, coverage will not be in effect.

2. **Contract Driver's** Termination Date. A **Contract Driver's** coverage under the **Policy** ends on the earliest of:
   a. the date the **Policy** is terminated;
   b. the Policy Premium Due Date shown in the **Schedule**, subject to the Policy Grace Period set forth in Section IV of the **Policy**;
   c. the date the **Contract Driver** requests, in writing, that his or her coverage be terminated;
   d. the date the **Contract Driver** ceases to be an **Insured Person**; or
   e. the date the **Owner/Operator**, with whom the **Contract Driver** is under contract, ceases to be an **Insured Person** and/or whose contract with the **Policyholder** terminated.

A change in **Your** coverage under the **Policy** due to a change in **Your** eligible class or benefit selection becomes effective on the later of: (1) the date the change in **Your** eligible class or benefit selection occurs; or (2) if premium change is required, the date the first changed premium is paid. However, a change in coverage applies only with respect to **Accidents** that occur after the change becomes effective.

## SECTION IV - PREMIUMS

### PREMIUMS

Premiums are payable to **Us** in the amount shown in the **Schedule**. **We** may change the required premiums due by giving the **Policyholder** at least thirty (30) days advance written notice. **We** may change the required premiums as a condition of any renewal of the **Policy**. **We** may also change the required premiums at any time when any change affecting premiums is made in the **Policy**.

**We** may re-underwrite and may change the terms and conditions of the **Policy** including the premium rate on the date when the number of **Insured Persons** under the **Policy** exceeds or is less than the number of **Insured Persons** in the prior month by fifteen percent (15%) or more. The **Policyholder** shall provide **Us** with written notice of such increase or decrease in the number of **Insured Persons** at least thirty (30) days prior to the effective date of such change.

### PLAN AND EXPOSURE CHANGES

The **Policyholder** must notify **Us** of any subsidiary or affiliated company that is to be covered under the **Policy**. Such notice must be sent within thirty (30) days of the acquisition of such subsidiary or affiliated company. If such notice is not provided, the newly acquired entity will not be considered a part of the **Policyholder** and the owner/operators or contract drivers will not be **Insured Persons** until the date that notice is provided. **We** have the right to decline coverage or adjust premium based on the changing exposure.

### YOUR PREMIUM

**Your** Premium is shown in the **Schedule** and shall be payable as follows:

1. if **You** enroll on or prior to the fifteenth (15th) day of the month, **You** shall pay an amount equal to the full monthly premium. No premium shall be payable for the last full or partial month of coverage; and

2.  if **You** enroll after the fifteenth (15th) day of the month, **You** shall pay a premium equal to the full monthly premium beginning on the first of the month following the month during which coverage becomes effective.  With respect to the last full or partial month of coverage, **You** shall pay an amount equal to the monthly premium.

## YOUR GRACE PERIOD

A grace period of thirty-one (31) days will be provided for the payment of **Your** Premium due after the first premium. **Your** coverage will not be terminated for non-payment of premium during this grace period if **You** pay the premium due by the last day of this grace period.  **Your** coverage will terminate if the full amount of the premium due is not paid by the last day of this grace period.

## POLICY GRACE PERIOD

A grace period of thirty-one (31) days will be provided for the payment of any premium due after the first premium.  The **Policy** will not be terminated for nonpayment of premium during this grace period if the **Policyholder** pays all premiums due by the last day of this grace period.  The **Policy** will terminate on the premium due date if all premiums due are not paid by the last day of this grace period.  No Policy Grace Period will be provided if **We** receive notice to terminate the **Policy** prior to a premium due date.

If **We** expressly agree to accept late payment of a premium without terminating the **Policy**, **We** do so in accordance with the Noncompliance With Policy Requirements provision in Section X of the **Policy**.  In such case, the **Policyholder** will be liable to **Us** for any unpaid premiums for the time the **Policy** is in force, plus all costs and expenses (including, but not limited to, reasonable attorney fees, collection fees and court costs) incurred by **Us** in the collection of all overdue amounts.

## WAIVER OF PREMIUM

During the period in which **You** are receiving a Temporary Total Disability Benefit or Continuous Total Disability Benefit, premiums will be waived from the first premium due date on or after the benefit begins to the premium due date following the date the benefit ceases, at which time premium payments must resume.  If premium payments are not resumed on that date, **Your** coverage under the **Policy** shall terminate on that date.  **You** are responsible for reporting Waiver of Premium to the **Policyholder** or an authorized person designated by the **Policyholder** or **Us**.

## SECTION V - BENEFITS

## ACCIDENTAL DEATH BENEFIT

If **Injury** to **You** results in death within the **Commencement Period**, **We** will pay the **Principal Sum** to the beneficiary in accordance with the Payment of Claims provision in Section IX of the **Certificate**.

## SURVIVOR'S BENEFIT

If an Accidental Death Benefit is payable under the **Policy**, **We** will pay the **Monthly Benefit Amount**, up to the **Principal Sum**, to **Your** surviving **Spouse**.

If **You** are not survived by a **Spouse**, or if **Your Spouse** dies or remarries, **We** will pay or continue to pay the Survivor's Benefit to **Your** surviving **Dependent Child(ren)**, if any.  If there is more than one surviving **Dependent Child**, the Survivor's Benefit will be distributed equally among the surviving **Dependent Children**.  Payment of the **Monthly Benefit Amount** will end on the earliest of the following:

1.  the date **Your Spouse** dies or remarries, if there are no **Dependent Child(ren)**;
2.  the date **Your** last **Dependent Child** dies or is no longer a **Dependent Child**; or
3.  the date the **Principal Sum** has been paid.

If **You** are not survived by a **Spouse** or any **Dependent Child(ren)**, **We** will not pay a Survivor's Benefit.

For this benefit, the following definition applies:

**Monthly Benefit Amount** means the product of the Monthly Benefit Percentage shown in the **Schedule** multiplied by the **Principal Sum**.

## EXPOSURE AND DISAPPEARANCE BENEFIT

If **You** are exposed to weather because of an **Accident**, which results in a **Covered Loss**, **We** will pay the applicable **Principal Sum**, subject to all **Policy** terms.

If **Your** body has not been found within one year after **Your** disappearance, stranding, sinking or wrecking of a power unit in which **You** were an occupant, then it will be presumed, subject to all other terms and provisions of the **Policy**, that **You**

have suffered Accidental Death within the meaning of the **Policy**. If **You** are found and identified, **We** have the right to recover any benefits paid.

## ACCIDENTAL DISMEMBERMENT BENEFIT

If **Injury** to **You** results in any one of the **Losses** specified below within the **Commencement Period**, **We** will pay the Percentage of the **Principal Sum** shown below:

| For **Loss** of: | Percentage of the **Principal Sum** |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Thumb and Index Finger of Same Hand | 25% |

If more than one **Loss** is sustained by **You** as a result of the same **Accident**, only one amount, the largest, will be paid.

For this benefit, the following definition applies:

**Loss**, in the singular or plural, of a hand or foot means complete severance through or above the wrist or ankle joint; **Loss** of sight of an eye means total and irrecoverable loss of the entire sight in that eye; and **Loss** of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

## PARALYSIS BENEFIT

If **Injury** to **You** results in any Type of Paralysis specified below within the **Commencement Period**, **We** will pay the Percentage of the **Principal Sum** shown below:

| Type of Paralysis: | Percentage of the **Principal Sum** |
|---|---|
| **Quadriplegia** | 100% |
| **Paraplegia** | 75% |
| **Hemiplegia** | 50% |
| **Uniplegia** | 25% |

If **You** sustain more than one Type of Paralysis as a result of the same **Accident**, only the largest single amount will be considered a **Covered Loss**.

For this benefit, the following definitions apply:

**Quadriplegia** means the complete and irreversible paralysis of both upper and both lower **Limbs**.

**Paraplegia** means the complete and irreversible paralysis of both lower **Limbs**.

**Hemiplegia** means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body.

**Uniplegia** means the complete and irreversible paralysis of one **Limb**.

**Limb**, in the singular or plural, means entire arm or entire leg.

## TEMPORARY TOTAL DISABILITY BENEFIT

If **Injury** to **You** results in Temporary Total Disability within the **Commencement Period** and **You** are under age 70 on the day the **Temporary Total Disability** begins, **We** will pay the following amount, after the **Waiting Period**:

1. for each week of a **Temporary Total Disability** during a **Single Period of Total Disability** the Temporary Total Disability Benefit is equal to the lesser of:
   a. the Benefit Percentage shown in the **Schedule** of the **Average Weekly Earnings**; or
   b. the **Maximum Weekly Benefit Amount**;
2. for less than a full **Benefit Week** of **Temporary Total Disability**, the Temporary Total Disability Benefit is one seventh (1/7) of the **Weekly Benefit Amount** for each day of **Temporary Total Disability**.

The Temporary Total Disability Benefit shall cease on the earliest of the following:
1. the date **You** are no longer **Temporarily Totally Disabled**;
2. the date **You** die;
3. the date the **Maximum Benefit Period** has been reached; or
4. the date on which the **Temporary Total Disability** is not substantiated by objective medical evidence satisfactory to **Us**.

For this benefit, the following definitions apply:
**Average Weekly Earnings** means:
1. for **Owner/Operators**:
   Thirty-three percent (33%) of the gross income **You** received, less fuel surcharges, in the twelve (12) weeks prior to the **Injury**, divided by twelve (12). If **You** worked less than twelve (12) weeks prior to the **Injury**, then thirty-three percent (33%) of the gross income received, divided by the number of weeks worked. **You** will have to produce proof of the number of weeks worked, if **You** worked less than twelve (12) weeks. If **You** sustain an **Injury** within seven (7) days of **Your** contract date with the **Policyholder**, **We** will use thirty-three percent (33%) of the average gross income received by other **Insured Persons** who were contracted within the last three (3) months prior to the **Injury**. If **You** and/or the **Policyholder** are unwilling or unable to produce any evidence of the gross income received in the twelve (12) weeks prior to the **Injury**, then **We** will use thirty-three percent (33%) of the gross income **You** received in the prior year as shown on **Your** federal income tax return with schedules or 1099s, divided by fifty-two (52), regardless of **Your** prior occupation.
2. for **Contract Drivers**:
   Seventy-five percent (75%) of the gross income **You** received in the twelve (12) weeks prior to the **Injury**, divided by twelve (12). If **You** worked less than twelve (12) weeks prior to the **Injury**, then seventy-five percent (75%) of the gross income received, divided by the number of weeks worked. **You** will have to produce proof of the number of weeks worked, if **You** worked less than twelve (12) weeks. If **You** sustain an **Injury** within seven (7) days of **Your** contract date with the **Policyholder**, **We** will use seventy-five percent (75%) of the average gross income received by other **Insured Persons** who were contracted within the last three (3) months prior to the **Injury**. If **You** and/or the **Policyholder** are unwilling or unable to produce any evidence of the gross income received in the twelve (12) weeks prior to the **Injury**, then **We** will use seventy-five percent (75%) of the gross income **You** received in the prior year as shown on **Your** federal income tax return with schedules or 1099s, divided by fifty-two (52), regardless of **Your** prior occupation provided **You** were not an **Owner/Operator**. If **You** were an **Owner/Operator**, then **We** will use 33% of the gross income.

**You** must produce proof of **Your** gross income and the number of weeks worked. Otherwise, **We** will pay the Minimum Benefit.

**Weekly Benefit Amount** means the lesser of seventy percent (70%) of the **Average Weekly Earnings** or the **Maximum Weekly Benefit Amount**. In no event will the **Weekly Benefit Amount** be less than the **Minimum Weekly Benefit Amount**.

**Benefit Week** means a seven (7) day period beginning on the first day of **Temporary Total Disability** after the **Waiting Period** and on the same day of each week thereafter.

**Continuous Care** means monthly monitoring or evaluation of the disabling condition by a **Physician**. **We** must receive proof of continuing **Temporary Total Disability** on a monthly basis.

**Single Period of Total Disability** means all periods of **Temporary Total Disability** due to the same or related causes (whether or not insurance has been interrupted) except any of the following, which are considered separate periods of disability:
1. successive periods of **Temporary Total Disability** due to entirely different and unrelated causes, separated by at least one full day during which **You** are not **Temporarily Totally Disabled**; or
2. successive periods of **Temporary Total Disability** due to the same or related causes, separated by at least six (6) months during which **You** are not **Temporarily Totally Disabled**.

**Temporary Total Disability or Temporarily Totally Disabled** means disability that:
1. prevents **You** from performing the **Material and Substantial Duties** of **Your** occupation as a commercial truck driver;
2. requires the care and treatment of a **Physician**; and
3. requires that and results in **Your** receiving **Continuous Care**.

If **You** do not adhere to the treatment plan the **Physician** prescribes relating to **Your** disabling condition, **You** shall not qualify for the Temporary Total Disability Benefit. During this period, **You** cannot engage in any activity which results in earned income.

**Material and Substantial Duties** means a duty or duties which **You** are required to perform under the terms of the written contract with the **Policyholder** or **Owner/Operator** and as described in **Your** application.

### Offsets

Subject to the **Minimum Weekly Benefit Amount**, the Temporary Total Disability Benefit shall be reduced by:

1. Social Security disability benefits excluding any amounts for which **Your** dependents may qualify because of **Your** disability;
2. Social Security retirement benefits;
3. the amount of any disability income benefits from any **Third Party**; and
4. the amount **You** receive as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit.

**You** must provide tax schedules and returns to **Us** for the purpose of calculating this offset.

## CONTINUOUS TOTAL DISABILITY BENEFIT

If **Injury** to **You** resulting in **Temporary Total Disability** subsequently results in **Continuous Total Disability**, **We** will pay the following, after the **Waiting Period**:

1. for each month of a **Continuous Total Disability**, the Continuous Total Disability Benefit is four and three-tenths (4.3) times the **Weekly Benefit Amount** for **Temporary Total Disability**; or
2. for less than a full **Benefit Week** of **Continuous Total Disability**, the Continuous Total Disability Benefit is one seventh (1/7) of the **Weekly Benefit Amount** for each day of **Continuous Total Disability**, but only if:
   a. Temporary Total Disability Benefits ceased solely because the **Maximum Benefit Period** has been reached, but **You** remain disabled;
   b. **You** are not within six (6) months or less of attaining **Your** full Social Security retirement age, as defined by the United States Social Security Administration, on the day after the **Maximum Benefit Period** for **Temporary Total Disability** has been reached;
   c. **You** have been granted a Social Security disability award for **Your** disability (if **You** cannot meet the credit requirement for a Social Security disability award **You** cannot qualify for the Continuous Total Disability Benefit even if **You** would otherwise qualify);
   d. **Your** disability is reasonably expected to continue without interruption until **You** die and is substantiated by objective medical evidence satisfactory to **Us**;
   e. the **Injury** resulting in a **Continuous Total Disability** occurred before **You** are within six (6) months or less of attaining **Your** full Social Security retirement age, as defined by the United States Social Security Administration; and
   f. the **Injury** began within the **Commencement Period**; and
   g. the **Temporary Total Disability** was not principally due to a **Mental and Nervous or Depressive Condition**.

The Continuous Total Disability Benefit shall cease on the earliest of the following:

1. the date **You** are no longer **Continuously Totally Disabled**;
2. the date **You** die;
3. the date **Your** Social Security disability award ceases;
4. the date the **Maximum Benefit Period** has been reached;
5. the date that the **Maximum Benefit Amount** has been paid; or
6. the date on which **Continuous Total Disability** is not substantiated by objective medical evidence satisfactory to **Us**.

For this benefit, the following definitions apply:

**Average Weekly Earnings** will be calculated as follows:

1. for **Owner/Operators**:

   Thirty-three percent (33%) of the gross income **You** received, less fuel surcharges, in the twelve (12) weeks prior to the **Injury**, divided by twelve (12). If **You** worked less than twelve (12) weeks prior to the **Injury**, then thirty-three percent (33%) of the gross income received, divided by the number of weeks worked. **You** will have to produce proof of the number of weeks worked, if **You** worked less than twelve (12) weeks. If **You** sustain an **Injury** within seven (7) days of **Your** contract date with the **Policyholder**, **We** will use thirty-three percent (33%) of the average gross income received by other **Insured Persons** who were contracted within the last three (3) months prior to the **Injury**. If **You** and/or the **Policyholder** are unwilling or unable to produce any evidence of the gross income received in the twelve

(12) weeks prior to the **Injury**, then **We** will use thirty-three percent (33%) of the gross income **You** received in the prior year as shown on **Your** federal income tax return with schedules or 1099s, divided by fifty-two (52), regardless of **Your** prior occupation.

2. for **Contract Drivers**:

Seventy-five percent (75%) of the gross income **You** received in the twelve (12) weeks prior to the **Injury**, divided by twelve (12). If **You** worked less than twelve (12) weeks prior to the **Injury**, then seventy-five percent (75%) of the gross income received, divided by the number of weeks worked. **You** will have to produce proof of the number of weeks worked, if **You** worked less than twelve (12) weeks. If **You** sustain an **Injury** within seven (7) days of **Your** contract date with the **Policyholder**, **We** will use seventy-five percent (75%) of the average gross income received by the other **Insured Persons**, who were contracted within the last three (3) months prior to the covered **Injury**. If **You** and/or the **Policyholder** are unwilling or unable to produce any evidence of the gross income received in the twelve (12) weeks prior to the **Injury**, then **We** will use seventy-five percent (75%) of the gross income **You** received in the prior year as shown on **Your** federal income tax return with schedules or 1099s, divided by fifty-two (52), regardless of **Your** prior occupation provided **You** were not an **Owner/Operator**. If **You** were an **Owner/Operator**, then **We** will use 33% of the gross income.

**You** must produce proof of **Your** gross income and the number of weeks worked. Otherwise, **We** will pay the Minimum Benefit.

**Weekly Benefit Amount** means the lesser of seventy percent (70%) of the **Average Weekly Earnings** or the Maximum Weekly Benefit. In no event will the **Weekly Benefit Amount** be less than the **Minimum Weekly Benefit Amount**.

**Benefit Week** means a seven (7) day period beginning on the day after the **Maximum Benefit Period** for **Temporary Total Disability** has been reached, and on the same day of each week thereafter.

**Continuous Total Disability or Continuously Totally Disabled** means disability that:

1. prevents **You** from performing the duties of any occupation for which **You** are qualified by reason of education, training or experience;
2. requires the care and treatment of a **Physician**; and
3. requires that, and results in, **Your** receiving **Continuous Care**.

**We** must receive proof of continuing **Continuous Total Disability** on a quarterly basis; provided however, that **We** may waive requirements 2 and 3. If **You** do not adhere to the treatment plan the **Physician** prescribes relating to **Your** disabling condition, **You** shall not qualify for **Continuous Total Disability**. During this period, **You** cannot engage in any activity which results in earned income.

**Continuous Care** means at least quarterly monitoring or evaluation of the disabling condition by a **Physician**.

## Offsets

Subject to the **Minimum Weekly Benefit Amount**, the *Continuous Total Disability Benefit* shall be reduced by:

1. Social Security disability benefits excluding any amounts for which **Your** dependents may qualify because of **Your** disability;
2. Social Security retirement benefits;
3. the amount of any disability income benefits from any **Third Party**; or
4. the amount **You** receive as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit.

**You** must provide tax schedules and returns to **Us** for the purpose of calculating this offset.

## ACCIDENT MEDICAL EXPENSE BENEFIT

If **You** suffer an **Injury** requiring treatment by a **Physician** within the **Commencement Period**, **We** will pay the **Usual and Customary Charges** incurred for **Medically Necessary Services or Charges** received or incurred due to such **Injury**, up to the **Maximum Benefit Amount** and **Maximum Benefit Period** for all **Injuries** caused by a single **Accident**, subject to any applicable **Deductible Amount**.

For this benefit, the following definitions apply:

**Ambulatory Medical Center** means a facility that:

1. operates under the laws of the state in which it is situated;
2. has a staff of **Physicians** and permanent facilities that are equipped and operated primarily for the purpose of providing medical services or performing subject procedures; and
3. provides continuous **Physician** and Graduate Registered Nurse (RN) services whenever a patient is in the facility.

**Ambulatory Medical Center** does not include a **Hospital**, **Physician's** office or clinic.

**Custodial Services** means any services which are not intended primarily to treat a specific injury. **Custodial Services** include, but shall not be limited to, services:
1. related to watching or protecting **You**;
2. related to performing or assisting **You** in performing any activities of daily living, such as:
   a. walking;
   b. grooming;
   c. bathing;
   d. dressing;
   e. getting in or out of bed;
   f. toileting;
   g. eating;
   h. preparing foods; or
   i. taking medications that can usually be self-administered; and
3. that are not required to be performed by trained or skilled medical or paramedical personnel.

**Durable Medical Equipment** means equipment of a type that is designed primarily for use by people who are injured (for example, a wheelchair or a **Hospital** bed). It does not include items commonly used by people who are not injured, even if the items can be used in the treatment of **Injury** or can be used for rehabilitation or improvement of health (for example, a spa or a stationary bicycle).

**Deductible Amount** means the total amount of **Medically Necessary Services or Charges** that must be paid by **You** before any Accident Medical Expense Benefit is paid under the **Policy**. **We** shall not be responsible for any **Medically Necessary Services or Charges** within the **Deductible Amount** as set forth in the **Schedule**.

**Extended Care Facility** means an institution that meets all of the following requirements:
1. operates under the laws of the state that it is situated in;
2. is approved by the United States Department of Health and Human Services or its successor;
3. is regularly engaged in providing skilled nursing care of sick or injured persons as inpatients at the patient's expense;
4. provides 24 hour a day nursing service by or under the supervision of a registered nurse;
5. provides skilled nursing care under the supervision of a **Physician**; and
6. maintains a daily medical record of each patient.

**Home Health Care** means nursing care and treatment of **You** in **Your** home as part of a treatment plan prescribed by the attending **Physician**, which is provided by a **Hospital** or agency certified to provide such services, but only if it:
1. begins within seven (7) days after discharge from a **Hospital**; and
2. follows a **Hospital** confinement of five (5) days or more.

**Hospital** means a facility that:
1. operates under the law of the state in which it is situated;
2. is approved by the United States Department of Health and Human Services or its successor;
3. has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis;
4. has 24-hour nursing service by registered nurses on duty or on call; and
5. is supervised by one or more **Physicians**.

A **Hospital** does not include:
1. a nursing, convalescent or geriatric unit of a **Hospital** when a patient is confined mainly to receive nursing care;
2. a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged, or any ward, room, wing or other section of a hospital that is used for such purposes; or
3. any military or veterans **Hospital** or soldiers home or any **Hospital** contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Medically Necessary Services or Charges** means one or more of the following, but only if each: (a) is essential for diagnosis, treatment or care of the **Injury** for which it is prescribed or performed; (b) meets generally accepted standards of medical practice; and (c) is ordered by a **Physician** and performed under his or her care, supervision or order:
1. **Hospital** room and board charges or room and board charges in an intensive care unit; **Hospital** ancillary services

(including but not limited to, use of the operating room or emergency room); use of an **Ambulatory Medical Center**; and **Hospital** charges for in-patient treatment of a **Mental and Nervous or Depressive Condition**, as shown in the **Schedule**;

2. treatment by a **Physician** of a covered **Mental and Nervous or Depressive Condition** due to an **Injury**, as shown in the **Schedule**;
3. Ambulance service to or from a **Hospital**, as shown in the **Schedule**;
4. laboratory tests;
5. radiological procedures;
6. anesthetics and the administration of anesthetics;
7. blood, blood products and artificial blood products, and the transfusion thereof;
8. Physical, Occupational or Work Hardening Therapies, Chiropractic Care and Acupuncture, as shown in the **Schedule**;
9. **Durable Medical Equipment** rental charges, up to the actual purchase price of such equipment;
10. the initial supply, but not any replacement of: casts, splints, trusses, braces, artificial limbs and artificial eyes;
11. medicines or drugs administered by a **Physician** or that can be obtained only with a **Physician's** written prescription;
12. repair or replacement of **Sound Natural Teeth** damaged or lost as a result of **Injury**, up to the Dental Benefit Maximum, if any, shown in the **Schedule**;
13. **Extended Care Facility**; or
14. **Home Health Care**.

**Personal Comfort or Convenience Item(s)** means those items that are not **Medically Necessary Services or Charges** for the care and treatment of the **Injury**, including but not limited to: (1) a non-essential private **Hospital** room; (2) television rental; and (3) **Hospital** telephone charges.

**Sound Natural Teeth** means natural teeth that are unaltered or are fully restored to their normal function and are disease free, have no decay, and are not more susceptible to injury than unaltered natural teeth.

**Usual and Customary Charge(s)** means an amount(s) that:
1. does not exceed the usual cost for similar treatment, services or supplies in the locality in which it is incurred; or for a **Hospital** room and board charge other than for stay in an intensive care unit, does not exceed the **Hospital's** most common charge for semi-private room and board or the fee set by the workers' compensation insurance fee schedule, if applicable; and
2. does not include charges that would not have been made if no insurance existed; and
3. does not exceed the cost of a generic drug, if available.  **We** will only pay up to seventy-five percent (75%) of a non-generic drug if a generic drug is available.

**ACCIDENT MEDICAL EXPENSE BENEFIT EXCLUSIONS**
In addition to the General Exclusions and Limitations in Section VIII of the **Policy, Medically Necessary Services or Charges** do not include expenses for or resulting from any of the following:
1. repair or replacement of existing artificial limbs, artificial eyes or other prosthetic appliances or repair of existing **Durable Medical Equipment** unless for the purpose of modifying the item because **Injury** has caused further impairment in the underlying bodily condition;
2. dentures, bridges, dental implants, dental bands or braces or other dental appliances, crowns, caps, inlays or onlays, fillings or any other treatment of the teeth or gums;
3. eye glasses or contact lenses;
4. hearing aids or hearing examinations;
5. rental of **Durable Medical Equipment** if the total rental expense exceeds the usual purchase price for similar equipment in the locality where the expense is incurred, unless authorized by **Us**;
6. **Custodial Services**;
7. **Personal Comfort or Convenience Items**;
8. services of any government **Hospital** for which **You** are not liable for payment;
9. any expenses covered by a **Third Party**;
10. expenses incurred which are more than the **Usual and Customary Charge**;
11. cosmetic, plastic or restorative surgery unless otherwise covered;
12. expenses which **You** are not legally obligated to pay;
13. an **Extended Care Facility** stay that does not follow a **Hospital** confinement of five (5) days or more;
14. any mileage costs or lodging expenses, unless authorized by **Us**;

15. any translation costs, unless authorized by **Us**; or
16. **Home Health Care** services provided by an **Immediate Family Member** or **Household Member**.

## SECTION VI - ADDITIONAL BENEFITS

### NOT APPLICABLE

## SECTION VII - LIMITS OF LIABILITY

The **Combined Single Limit of Liability** shown in the **Schedule** is the maximum amount **We** will pay under the **Policy** for all **Covered Loss** with respect to **You** arising out of **Injury** sustained by **You** as the result of any one **Accident** or Occurrence. The term Occurrence means a single event or related events or originating cause occurring within a 24-hour period.

The **Aggregate Limit of Liability** shown in the **Schedule** is the maximum amount **We** will pay under the **Policy** for all **Covered Losses** with respect to all **Insured Persons** arising out of all **Injuries** sustained as the result of any one **Accident**.

If either the **Combined Single Limit of Liability** or the **Aggregate Limit of Liability** is not enough to pay all **Covered Loss**, **We** will pay reduced benefit amounts based upon the proportion that the **Covered Loss** bears to each benefit or expected total benefits that would otherwise be payable. If the total benefits are unknown, **We** will determine the total expected benefits for **You**.

Limitation on Multiple **Covered Loss**. If **You** suffer more than one **Covered Loss** under one benefit as a result of the same **Accident**, **We** will pay only up to the largest **Covered Loss** amount.

Limitation on Multiple Benefits. If **You** can recover benefits under two or more of the Accidental Death Benefit, Accidental Dismemberment Benefit, Coma Benefit or the Accidental Paralysis Benefit as a result of the same **Accident**, **We** will pay only up to the highest applicable **Principal Sum**.

## SECTION VIII - GENERAL EXCLUSIONS AND LIMITATIONS

The **Policy** does not cover any losses which are the direct result of any of the following:

1. suicide or any attempt at suicide; intentionally self-inflicted **Injury** or any attempt at intentionally self-inflicted **Injury** or any **Injury** resulting from a provoked attack;
2. sickness, disease or infections of any kind, except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning or routine and temporary non chronic sickness or illness such as a cold, cough, headache or nausea;
3. a **Pre-existing Condition**, until **You** have been continuously covered under the **Policy** for twelve (12) consecutive months;
4. **Occupational Cumulative Trauma** or **Cumulative Trauma and Repetitive Conditions**, unless shown in the **Schedule**;
5. **Occupational Disease**, unless shown in the **Schedule**;
6. performing, learning to perform or instructing others to perform as a crew member of any vessel while covered under the Jones Act or the United States Longshoremen and Harbor Workers' Act, or similar coverage;
7. declared or undeclared war, or any act of declared or undeclared war;
8. full-time active duty in the armed forces of any country or international authority;
9. any **Injury** for which **You** are entitled to benefits pursuant to any workers' compensation law or other similar legislation;
10. any loss insured by employers' liability insurance;
11. **You** being intoxicated:
    a. **You** are conclusively deemed to be intoxicated if the level of alcohol in **Your** blood exceeds the amount at which a person is presumed, under the law of the locale in which the **Accident** occurred, to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle, regardless of whether **You** are in fact operating a motor vehicle when the **Injury** occurs; and
    b. an autopsy report from a licensed medical examiner, law enforcement officer reports or similar items will be considered proof of **Your** intoxication;

12. **You** being under the influence of any illegal substance, drug, narcotic, or hallucinogen, unless such drug, narcotic, or hallucinogen was prescribed by a **Physician** and taken in accordance with the prescribed dosage;

13. **Your** commission of or attempt to commit a felony or a Class A misdemeanor;

14. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if **You** are:
    a. riding as a passenger in any aircraft not intended or licensed for the transportation of passengers;
    b. performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or
    c. riding as a passenger in an aircraft owned, leased or operated by the **Policyholder** or **You**;

15. skydiving, parasailing, hang-gliding, bungee-jumping or any similar activity; or

16. charges incurred for treatment of a covered **Injury**, when **You** obtain compensation for the covered **Injury** from a **Third Party**.

INCARCERATION LIMITATION

Benefits provided to **You** will cease while **You** are incarcerated in a penal facility. The benefit will resume, as if the benefits had been paid, subject to all **Policy** conditions, when **You** are released from such facility.

## SECTION IX - CLAIM PROVISIONS

### NOTICE OF CLAIM

Written notice of claim must be received by **Us** within twenty (20) days after **Your** loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the claimant to **Us** at Zurich American Insurance Company Group Accident Claims Division, P.O. Box 968041 Schaumburg, IL 60196 with information sufficient to identify **You**, is deemed notice to **Us**.

### CLAIM FORMS

**We** will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within thirty (30) days after the giving of notice, the claimant will be deemed to have met the Proof of Loss requirements upon submitting, within the time fixed in the **Policy** for filing Proofs of Loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include **Your** name, the **Policyholder's** name and the Policy Number.

### PROOF OF LOSS

Written Proof of Loss acceptable to **Us** must be received by **Us** within ninety (90) days after the date of the loss. If the loss is one for which the **Policy** requires continuing eligibility for periodic benefit payments, subsequent written proof acceptable to **Us** must be received by **Us**, at such intervals as **We** may reasonably require, establishing continued eligibility for the benefit. Failure to furnish such proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give such proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time such proof is otherwise required. **We** have a right to investigate any documents that **You** shall make available to **Us** upon request.

### PAYMENT OF CLAIMS

Upon receipt of written proof of death, payment for loss of life of **You** will be made to **Your** beneficiary or, if there is no beneficiary designated, **Your** survivors in the following order:

1. **Your Spouse**;
2. **Your** child(ren);
3. **Your** parents;
4. **Your** brothers and sisters;
5. **Your** estate.

Upon receipt of written Proof of Loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) **You**. If **You** die before all payments due have been made, the amount still payable will be paid to **Your** beneficiary or, if there is no beneficiary designated, **Your** survivors in the order as listed above.

### BENEFICIARY DESIGNATION AND CHANGE

**Your** designated beneficiary(ies) is (are) the person(s) so named by **You** as shown on the **Policyholder's** records kept on the **Policy**.

A legally competent **Insured Person** over the age of majority may change his or her beneficiary designation at any time,

unless an irrevocable designation has been made.  The change may be executed, without the consent of the designated beneficiary(ies), by providing the **Policyholder** with a written request for change.  When the request is received by the **Policyholder**, whether the **Insured Person** is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to **Us** on account of any payment which is made prior to receipt of the request.

Except for the Survivor's Benefit, if there is no designated beneficiary or no designated beneficiary is living after **Your** death, payment will be made to **Your** estate.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property.  If the payee has no legal guardian for his or her property, a payment not exceeding one thousand dollars ($1,000) may be made, at **Our** option, to any relative by blood or connection by marriage of the payee, who, in **Our** opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

**We** shall pay benefits directly to any **Hospital** or person rendering covered services, unless **You** request otherwise in writing and provides proof that payment was made directly to such **Hospital** or person.  Such request must be made no later than the time Proof of Loss is filed.  Any payment **We** make in good faith fully discharges **Our** liability to the extent of the payment made.

## TIME OF PAYMENT OF CLAIM
Benefits payable under the **Policy** for any loss other than loss for which the **Policy** provides any periodic payment will be paid within thirty (30) days upon **Our** receipt of written Proof of Loss.  Benefits payable periodically under the **Policy** will be paid at four (4) week intervals during the continuance of the period for which **We** are liable, subject to **Our** receipt of written Proof of Loss, and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

## REHABILITATION
**We** will consider paying for a rehabilitation program for **You** based on an **Occupational Assessment** provided **You** are receiving benefits under either the **Temporary Total Disability Benefit** or the **Continuous Total Disability Benefit**.  The rehabilitation program must be mutually agreed upon by **You** and **Us**.  The extent of **Our** participation will be determined solely by **Us**.  Any benefits payable will continue during **Your** rehabilitation unless otherwise agreed to by **Us**.

## SUNSET
In no event shall benefits under the **Policy** be payable unless written Proof of Loss is received by **Us** within three (3) years from the date of the **Accident**.

## ARBITRATION

An arbitration provision is not a substitute for **Your** right to maintain a legal action if **You** so desire, and in no way affects or limits **Your** ability to take legal action in a court of law, **prior to voluntarily agreeing to enter into an arbitration proceeding**.

Any controversy of claim arising out of or relating to the **Policy**, or the breach thereof, **may be** settled by arbitration. The arbitration will be conducted pursuant to the applicable rules of the American Arbitration Association and in accordance with the Uniform Arbitration Act 710 ILCS 51 et seq. within a reasonable time limit (30 (thirty) days after the parties agree to arbitrate their dispute is a reasonable time limit for selecting and appointing independent arbitrators, 15 (fifteen) days is a reasonable time limit for an expedited review). The arbitration **may be** binding on both parties, but in all instances **must be entered into on a voluntary basis**. Arbitrators must be fair, impartial, and free of any conflicts of interest or the appearance of a conflict of interest.

**By voluntarily agreeing to enter into an arbitration proceeding, the parties should be aware and understand that they may be giving up certain rights to have their dispute settled in and by a court of law, except to the extent Illinois law may provide for judicial review of arbitration proceedings.**

The arbitration shall occur at the offices of the American Arbitration Association nearest to **You** or the person claiming to be the beneficiary. The arbitrator(s) shall not award consequential or punitive damages in any arbitration under this section. This provision does not apply if **You** or the person claiming to be the beneficiary is a citizen of a state where the law does not allow binding arbitration in an insurance policy but only if the **Policy** is subject to its laws. In such a case, binding arbitration does not apply. This provision bars the institution of any individual or class action lawsuit brought by **You** or the beneficiary if the parties voluntarily agree to an arbitration proceeding.

Any arbitration provision in no way affects **Your** ability to file a complaint with the Illinois Department of Financial and Professional Regulation, Division of Insurance, Consumer Services division, 320 West Washington, Springfield, Illinois 62727.

## SECTION X - GENERAL PROVISIONS

### ENTIRE CONTRACT

The **Policy**, together with any riders, endorsements, amendments, applications, enrollment forms and attached papers, if any, make up the entire contract between the **Policyholder** and **Us**. In the absence of fraud, all statements made by the **Policyholder** or any **Insured Person** will be considered representations and not warranties. No written statement made by **You** will be used in any contest unless a copy of the statement is furnished to **You** or **Your** beneficiary or personal representative.

No changes in the **Policy** will be valid until approved by an officer of **Our's**. The approval must be noted on or attached to the **Policy**. No agent may change the **Policy** or waive any of its provisions.

### CERTIFICATE OF INSURANCE

**We** will provide the **Policyholder** with a Certificate of Insurance, in either paper or electronic format, for delivery to each **Insured Person**, where required by state law. Such Certificate of Insurance will contain a summary of terms that affect benefits.

### INCONTESTABILITY

The validity of the **Policy** will not be contested after it has been in force for two year(s) from the Policy Effective Date shown in the **Schedule**, except as to nonpayment of premiums.

### POLICYHOLDER RECORDS

The **Policyholder** will keep a record of the coverage, premium, beneficiary designation and other pertinent administrative information for each **Insured Person** which, if acceptable to **Us**, shall be deemed to be a part of the **Policy**. **We** may examine these records at any reasonable time while the **Policy** is in force and for six (6) years after the termination of the **Policy**. The **Policyholder** will report to **Us** within a reasonable time all changes in information regarding an **Insured Person**. The **Policyholder** shall indemnify **Us** for any benefits or other payments that are caused in whole or in part by the **Policyholder's** negligence or error in performing the administration described herein.

### PHYSICAL EXAMINATION AND AUTOPSY

**We** have the right, at **Our** own expense, to examine the **Insured Person** whose **Injury** is the basis of a claim, when and as often as it may be reasonably required while a claim is pending. **We** may also require an autopsy where it is not prohibited by law.

## LEGAL ACTIONS

In those states where binding arbitration is not allowed, no legal action for a claim can be brought against **Us** until sixty (60) days after receipt of written Proof of Loss. In those states where binding arbitration is not allowed, no legal action for a claim can be brought against **Us** more than three (3) years (six (6) years in South Carolina and Wisconsin, five (5) years in Kansas, Florida and Tennessee) after the time for giving written Proof of Loss. In those states where binding arbitration is allowed, binding arbitration shall supersede this provision.

## NONCOMPLIANCE WITH POLICY REQUIREMENTS

Any express waiver by **Us** of any requirements of the **Policy** will not constitute a continuing waiver of such requirements. Any failure by **Us** to insist upon compliance with any **Policy** provision will not operate as a waiver or amendment of that provision.

## CONFORMITY WITH STATE STATUTES

Any provision of the **Policy** that, on its effective date, is in conflict with the statutes of the state in which the **Policy** was delivered, is hereby amended to conform to the minimum requirements of such laws.

## CLERICAL ERROR

Clerical error, whether by the **Policyholder**, the Producer or **Us**, in keeping records pertaining to the **Policy**, will not:
1. invalidate coverage otherwise validly in force; or
2. continue coverage otherwise validly terminated.

## DATA REQUIRED

The **Policyholder** must maintain adequate records acceptable to **Us** and provide any information required by **Us** relating to this insurance.

## AUDIT

**We** will have the right to inspect and audit, at any reasonable time, all records and procedures of the **Policyholder** that may have a bearing on this insurance.

## ASSIGNMENT

This **Policy** is non-assignable.

## SUBROGATION

**We** have the right to recover all payments including future payments, which **We** have made to **You** or on behalf of **Your** covered dependents, heirs, guardians or executors or will be obligated to pay in the future to **You**, from any **Third Party**. If **You** recover from any **Third Party**, **We** will be reimbursed first from such recovery to the extent of **Our** payments to **You**. **You** agree to assist **Us** in preserving **Our** rights against any **Third Party**, including but not limited to, signing subrogation forms supplied by **Us**.

## MADE WHOLE DOCTRINE

**We** have the right to recover any and all first monies paid (or payable) to or on behalf of **You** and to any and all claims of or on behalf of **You**, to the extent of benefits paid by the **Policy**, and regardless of whether or not the beneficiary has been made whole. Made whole shall include first dollar recovery with no offset for attorneys' fees.

## RIGHT TO RECOVER OVERPAYMENTS

In addition to any rights of recovery, reimbursement or subrogation provided to **Us** herein, when payments have been made by **Us** with respect to a **Covered Loss** in an amount in excess of the maximum amount of payment necessary to satisfy an obligation under the terms of the **Policy**, **We** shall have the right to recover such excess payment, from any person to whom such payments were made. **We** maintain the right to offset the overpayment against other benefits payable to **You** (and **Your** assignee) under the **Policy** to the extent of the overpayment.

## CONDITIONAL CLAIM PAYMENT

If **You** suffer a **Covered Loss** as the result of an **Injury** for which a **Third Party** may be liable, **We** will pay the amount of benefits otherwise payable under the **Policy**. However, if **You** receive payment from the **Third Party**, **You** agree to refund to **Us** the lesser of:

1. the amount actually paid by **Us** for such **Covered Loss**; or
2. an amount equal to the sum actually received from the **Third Party** for such **Covered Loss**.

If **You** do not receive payment from the **Third Party** for such **Covered Loss**, **We** reserve the right to subrogate under the Subrogation clause of the **Policy**.

At the time such **Third Party** liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. This provision shall not apply where prohibited by law.

## CLAIMS FOR WORKERS' COMPENSATION AND OTHER INSURANCE

No benefits shall be payable under the **Policy** for any loss for which **You** claim or file for any workers' compensation, employers' liability, occupational disease or similar law or any other insurance until such claim or filing is approved or denied. Upon approval or denial, **We** shall determine **Our** liability under the **Policy**. **We** reserve the right to recover, from **You**, any benefits paid under the **Policy** that are subsequently paid for under any workers' compensation, employers' liability, occupational disease or similar law or any other insurance.

Workers' Compensation Indemnification. If **You** are determined by a court of law or the appropriate state regulatory authority to be covered under workers' compensation insurance for a **Covered Loss**, any benefits for which **You** are eligible under the **Policy**, are payable to the person who was determined to be **Your** employer or such person's designee or assignee.

# BARBAS NUÑEZ SANDERS
# BUTLER & HOVSEPIAN

Attorneys and Counselors at Law

Est. 1982

www.BarbasLaw.com

●● STEPHEN M. BARBAS
★● KELLY BARCIA NUÑEZ
● L. GRAY SANDERS
◆ JIMMIE BUTLER

STEVEN E. HOVSEPIAN
KRISTEN H. EMERSON

GARY G. CARPENTER
OF COUNSEL

November 30, 2018

Zurich American Insurance Company
c/o Florida Chief Financial Officer as RA
200 E. Gaines Street
Tallahassee, FL 32399

Re: Bozena Chrzasvcz v. Zurich American Insurance Company
Civil Action No.: 18-007549-CI

Dear Sir or Madame:

Enclosed please find and original and one copy of the Summons to Zurich American Insurance Company and Complaint. We also enclose a $15.00 check payable to "Department of Financial Services" (pursuant to section 624.502, F.S.) for service of process of the summons and Complaint for Bozena Chrzasvcz as upon the insurance carrier.

If you have any questions or concerns please do not hesitate to contact me.

Sincerely,

BARBAS, NUÑEZ, SANDERS,
BUTLER & HOVSEPIAN

Steven E. Hovsepian

SH/ts
Enclosure

1802 West Cleveland St.
Tampa, FL 33606
(813) 254-6575 • FAX (813) 254-4690

● *Florida Bar Board Certified in Workers Compensation*   ◆ *Certified Circuit Court Mediator*   ★ *Federal Court Mediator*



**From:**      noreply@myflcourtaccess.com
**Sent:**      Tuesday, November 20, 2018 11:21 AM
**Subject:**   4963-1472 Chrzascz, Bozena v. Zurich American Insurance Company: Processing
Completed for Filing # 81021808

Dear Steven E Hovsepian:

This email verifies the processing of your Filing # **81021808** with the Pinellas County, Florida Circuit Civil Division.

| | |
|---|---|
| Status: | **Accepted** |
| Filing Date/Time: | 11/19/2018 05:40:01 PM |
| UCN: | 522018CA007549XXCICI |
| Clerk Case #: | 18-007549-CI [Note: Clerk Case # changed from NEW CASE] |
| Case Style: | Bozena Chrzasvcz VS Zurich American Insurance Company |
| Matter #: | |
| Memo: | |
| Filing Fee: | $400.00 |
| Complaints & Statements of Claim COMPLAINT: | $0.00 |
| Exhibits & Transcripts EXHIBIT: | $0.00 |
| Statutory Convenience Fee: | $14.00 |
| Total Paid: | $414.00 |
| Fee Status: | Processing |
| Paid By: | Pay By Credit/Debit Card |
| MFC Order #: | 23171232 |

## Documents

| # | Document Type | Status | Filing Date | Rejection Reason |
|---|---|---|---|---|
| 1 | Other CIVIL COVER SHEET | Accepted | 11/19/2018 | |
| 2 | Complaints & Statements of Claim COMPLAINT | Accepted | 11/19/2018 | |

| 3 | Exhibits & Transcripts EXHIBIT | Accepted | 11/19/2018 | |

Fees

Your filing has been docketed with the Clerk's office. The fee is in the process of Processing. At that time, the fee settlement will be transmitted to your banking institution for payment. You, as the filer are responsible for fee payment. If there are any issues with payment processing, you will be contacted by the Civitek Banking Department.

This is a non-monitored email. Do not reply directly to it. If you have any questions about this filing, please contact the Pinellas County, Florida Circuit Civil Division.

Thank you.

*Many counties no longer require paper follow-up. To see a complete list, click on this link.*